UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHAHNAM DAVANI,<br><br>Defendant.<br><br>GOLDMAN SACHS & CO., LLC,<br><br>Garnishee. | Case No. 04-cr-00224-JSW-1<br><br>**ORDER DENYING, IN PART, AND RESERVING, IN PART, BERNADETTE GOMEZ'S MOTION TO QUASH WRIT OF CONTINUING GARNISHMENT PENDING FURTHER BRIEFING**<br><br>Re: Dkt. No. 104 |

Now before the Court for consideration is the motion to quash a writ of continuing garnishment filed by Bernadette M. Gomez ("Ms. Gomez"), who is Defendant Shahnam Davani's wife. The Court has considered the briefs, relevant legal authority, the record in this case, and heard oral argument on March 14, 2023. For the reasons that follow, the Court DENIES, IN PART, Gomez's motion. The Court RESERVES ruling on the issue of fraudulent transfer pending further briefing. The stay of the writ of continuing garnishment remains in place pending resolution of that issue.

**BACKGROUND**

Mr. Davani married Ms. Gomez in February 2003. On June 27, 2005, Mr. Davani pled guilty to six counts of mail, wire, and bank fraud based on conduct that occurred in 2000-2001. On February 16, 2006, the Court sentenced Mr. Davani and imposed restitution in the amount of $295,000.00 ($185,000.00 to Bank of America and $110,000 to Capital Suisse Securities LLC). (Dkt. Nos. 41, 51, 53.) (Dkt. No. 93-2 at ECF 1-3, Declaration of Allen Williams ("Williams Decl."), ¶ 9; Dkt. No. 93-2 at ECF 24-28, Williams Decl., Ex. C at ECF 26 (marriage certificate);

1  Dkt. No. 107-1, Opposition Declaration of Allen Williams ("Williams Opp. Decl."), ¶ 7; Dkt. No.
2  109-1, Williams Opp. Decl., Ex. C (Presentence Investigation Report, ¶¶ 6-11, 51).)
3        On or about December 22, 2008, Mr. Davani and Ms. Gomez executed a Community
4  Property Agreement, which purports to document an oral premarital agreement.[1]  The Community
5  Property Agreement provides:

> This agreement if [*sic*] being prepared to memorialize the parties'
> prior oral agreement that in accordance with California Family Code
> § 1000, which states: "A married person is not liable for any injury
> or damage caused by the other spouse except in cases where the
> married person would be liable therefore if the marriage did not
> exist;" the parties agreed, prior to marriage, and hereby reaffirm,
> that the assets of Bernadette Gomez, specifically her home, and her
> salary are not available to provide restitution and or satisfaction to
> Shahnam Davani's creditors, in connection with the events alleged
> in CR 04-0224 JSW or any other claims that Davani defrauded
> banks, investors and other individuals prior to the parties [*sic*]
> marriage.
>
> The agreement that all Bernadette Gomez's separate property owned
> prior to marriage and any new property purchased with the proceeds
> of any separate property prior to marriage would remain her separate
> property and that *all income earned during the marriage would be
> her separate property* and that all assets purchased with proceeds of
> Bernadette Gomez's earning during the marriage would be her
> separate property was an express condition of the marriage between
> Bernadette Gomez and Shahnam Davani.

17  (Dkt. No. 106-3, Ex. C to Mr. Davani's Motion to Quash (emphasis added).)
18        On April 25, 2012, the Court granted the United States Probation Office's request to allow
19  Mr. Davani's term of supervised release to expire with a restitution balance in the amount of
20  $288,051.00.  (Dkt. No. 85.)
21        On January 3, 2023, the United States filed an application for writs of continuing
22  garnishment to be issued to Plastikon Industries, Inc., Mr. Davani's employer, and Goldman Sachs
23  & Co., LLC, Ms. Gomez's employer.  The United States attested that Mr. Davani had paid a total
24  amount of $12,089.00 in restitution.  As of January 3, 2023, with accumulated interest, the balance
25  of the debt was $513,914.95.  The United States asked for writs in the amount of 565,306.44,
26  which included a 10% statutory sur-charge on the unpaid restitution.  (Dkt. No. 86-1, Declaration

---

[1] The Court refers to the oral and written agreement as the "Community Property Agreement" in the remainder of this Order only for ease of reference.

2

of Gina Vieyra, ¶ 5.)

The United States also represented that it had made a demand on Mr. Davani in 2019. The Court required a supplemental statement about whether it had made a more recent demand. (Dkt. Nos. 91, 93.) After considering the supplemental statement, the Court granted the United States' application, and the writs were issued on January 20, 2023. Ms. Gomez then moved for leave to file a motion to quash and to stay these proceedings pending a resolution of that motion. On January 23, 2023, the Court granted the motion to stay.

## ANALYSIS

The Court imposed restitution pursuant to the Mandatory Victims Restitution Act ("MVRA"), which authorizes the Government to enforce the restitution order using collection procedures set forth in the Federal Debt Collection Procedures Act ("FDCPA"). 28 U.S.C. § 3002(3)(B); *see also United States v. Mays*, 430 F.3d 963, 965 (9th Cir. 2005) (concluding that the FDCPA's civil enforcement remedies may be used to enforce orders of restitution entered under the MVRA). The FDCPA preempts "State law to the extent such law is inconsistent." 28 U.S.C. § 3003(d). Under the FDCPA, the Court is permitted to "issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor." 28 U.S.C. § 3205(a). Section 3202(d) limits a hearing on a motion to quash to specific issues including "compliance with any statutory requirement for the issuance" of the writ.

Ms. Gomez does not dispute that California law permits a creditor to garnish community property. However, she argues the Government failed to establish Mr. Davani has a substantial non-exempt interest in her future earnings. In the alternative, Ms. Gomez argues the Court should exercise its discretion to terminate the writ on the basis that her monthly household expenses exceed her monthly income. *See id.* § 3013 (court may deny, limit, condition, or modify the use of any enforcement procedure).

**1.     The Family Code Provisions.**

Ms. Gomez's first argument is that her wages are protected from garnishment by

3

provisions of California's Family Code. The parties agree there is a "presumption … that property acquired during [a] marriage is community property." *Strum v. Moyer,* 32 Cal. App. 5th 299, 305 (2019) (citing Cal. Fam. Code § 760). In addition, Mr. Davani's and Ms. Gomez's community estate could be held liable for the restitution judgment because, "[e]xcept as otherwise expressly provided by statute, the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt." Cal. Fam. Code § 910(a); *see also In re Soderling*, 998 F.2d 730, 734 (9th Cir. 1993).

However, the Family Code protects the earnings of a spouse for pre-marital debts:

> The earnings of a married person during marriage are not liable for a debt incurred by the person's spouse before marriage. After the earnings of the married person are paid, they remain not liable so long as they are held in a deposit account in which the person's spouse has no right of withdrawal and are uncommingled with other property in the community estate, except property insignificant in amount.

*Id.* § 911(a).

Ms. Gomez argues that if the restitution judgment was "incurred" before they married, the plain text of Section 911(a) precludes the Government from garnishing her wages. *Cf. Craig v. Chopra*, No. No. G044117, 2011 WL 1554363, at *1, 3 (Cal. Ct. App. Apr. 26, 2011) (trial court noted a turnover order would be required before garnishment and appellate court affirmed on basis debt was premarital); Cal. Practice Guide, Family Law, § 8.744 ("Clearly, for so long as the nondebtor spouse's earnings are in 'payable' status (not yet received), they cannot be reached by garnishment, attachment or otherwise to satisfy the other's premarital debts."). The Court agrees.

Therefore, in order to garnish Ms. Gomez's wages, the Government must show the restitution judgment is *not* a pre-marital debt, which depends on when it was "incurred." When a debt arises because of a contract, it is incurred when the contract is made. Cal. Fam. Code § 903(a). When it arises because of a tort, the debt is incurred "at the time the tort occurs." *Id.* § 903(b). In all other cases, the debt is incurred "at the time the obligation arises." *Id.* § 903(c). Ms. Gomez argues that because the conduct underlying Mr. Davani's criminal charges was fraudulent, Section 903(b) applies. The Government argues because the restitution judgment arose

4

out of a criminal case, Section 903(c) applies.

The Court concludes the Government has the better argument. California's Family Code defines the term "debt" as "an obligation incurred by a married person before or during marriage, whether based on contract, tort, or otherwise." Cal. Fam. Code § 902. In *In re Soderling*, *supra*, the issue before the court was whether a criminal restitution judgment was dischargeable in bankruptcy. The court concluded the debt was non-dischargable as to the defendants' separate property. 988 F.2d at 731-32. The court then considered whether the debt also was non-dischargable as to community property. The court concluded the California Supreme Court would hold that a restitution judgment was a "debt" under the Family Code's definition of that term. It reasoned the Bankruptcy Code's definition of debt "as a liability based on a right to payment is synonymous with California law's definition of debt as an obligation." 988 F.2d at 734. The court did not examine when the conduct underlying the defendant's convictions occurred in its analysis but determined the restitution judgments were incurred during the debtor's marriages, rendering the community property "potentially liable" for a creditor's claim in bankruptcy. *Id.*

Ms. Gomez argues that Section 903(c) applies only when the underlying claim is purely statutory and argues that *Bailey v. Rose*, on which the Government relies, supports her positions. No. H044788, 2019 WL 2710209 (Cal. App. June 28, 2019). *Bailey* involved competing interests in a deposit account held by the judgment debtor's wife. The debtor argued the funds in the account were protected from a judgment lien by Family Code section 911(a) because the gravamen of the civil suit was fraud and breach of contract. The creditors argued the court should look at the individual causes of action, two of which were statutory and were not based on a contract claim or a tort. *Id.* at *1-*2.

The court reasoned the "gravamen of the fourth cause of action [was] the statutorily proscribed conduct, which [was] not tantamount to a tort" and reasoned the creditor did not need to prove the elements of a tort on that claim to prevail. That court also stated that cause of action also was not based on a contractual obligation. Instead, the "primary right" that gave rise to the claim was "the right to be free from unlawful attorney solicitation, not the right to be free from the other conduct underlying the class action lawsuit." *Id.* at *3. Because judgment had been entered

5

on each cause of action, the court concluded the debt was incurred when the judgment was entered, which was after the debtor and his wife had married. *Id.*, at *3-4. If this were a civil case, the Court might find Ms. Gomez's argument about *Bailey* persuasive. Here, however, the criminal charges served to vindicate the public interest rather than the victims' private interest.

Accordingly, the Court concludes Mr. Davani "incurred" the debt when the Court imposed restitution as part of the criminal judgment. Because it is undisputed that Mr. Davani and Ms. Gomez were married at that time, Section 911(a) is not applicable.

**2.   The Community Property Agreement.**

Ms. Gomez also relies on the Community Property Agreement to argue her wages cannot be garnished. Under California law, couples are permitted to "change the character of the property they acquire during marriage from community property to separate property." *Strum*, 32 Cal. App. 5th at 306; *see also* Cal. Fam. Code §§ 1500, 1600, *et seq.* In general, premarital agreements must be in writing. Cal. Fam. Code § 1611; *see also In re Marriage of Shaban*, 88 Cal. App. 4th 398, 405 (2001) ("California has had in place, since 1872, a statute of frauds provision for prenuptial agreements."). A creditor also may challenge a premarital agreement on the ground that it is a fraudulent conveyance. *See* 28 U.S.C. § 3304(a); *Strum*, 32 Cal. App. 5th at 315 (holding pre-marital agreements subject to California's Uniform Voidable Transactions Act, Cal. Civ. Code § 3439, *et seq.*). Ms. Gomez bears the burden to prove the existence of the pre-marital agreement documented in the Community Property Agreement, and the Government bears the initial burden to demonstrate it is a fraudulent transfer.

Ms. Gomez argues that any effort by the Government to set aside the Community Property Agreement is barred by the statute of limitations. The Government argues it may invoke California's Uniform Voidable Transfers Act and is not bound by the state statute of limitations governing that act, citing *United States v. Summerlin*, 310 U.S. 414, 416 (1940). "In the absence of a federal statute expressly imposing or adopting a statute of limitations, the United States is not bound by any state limitations period." *United States v. Gianelli*, No. CR-86-20083-RMW, 2007 WL 1299425, at *5 (N.D. Cal. May 1, 2007) (citing *United States v. Thornburg*, 82 F.3d 886, 893 (9th Cir. 1996)). The Government applied for the writ of continuing garnishment pursuant to the

FDCPA, which contains an express statute of limitations regarding fraudulent transfers. Specifically, when based on actual fraud, a claim must be brought within "two years after the transfer or obligation was or reasonably could have been discovered by the" government. 28 U.S.C. § 3306(b)(1). When a claim is based on constructive fraud, it must be brought within six years of the transfer. *Id.* § 3306(b)(2). The Government attests it did not learn of the Community Property Agreement until September 2022. (Dkt. No. 93-1, Declaration of Vivian Wang, ¶ 4; Williams Decl., ¶¶ 8-9.) If there is evidence of actual fraud, a claim based on fraudulent transfer would not be time barred.

The Court RESERVES ruling on the issue of whether the Community Property Agreement would protect Ms. Gomez's earnings from the writ of continuing garnishment in order to further develop the record. Ms. Gomez attests the parties entered into that agreement, and the Government asserts there is deposition testimony to call her declaration into question. In addition, the Government has not addressed the factors relevant to a determination of actual intent to defraud set forth in 28 U.S.C. section 3304(b) and any evidence to support those factors.

Accordingly, the Government shall file a supplemental brief and evidence by no later than April 11, 2023. Ms. Gomez may file a supplemental response and any supplemental evidence by April 25, 2023. The Government may reply by May 2, 2023. Unless the Court determines a hearing is required, it will resolve the matter on the papers, and the stay of the writ remains in place until the Court resolves this portion of the motion.

**IT IS SO ORDERED.**

Dated: March 22, 2023

_____
JEFFREY S. WHITE
United States District Judge